IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

William L. Ridenour,  :
    Plaintiff,  :
  v.  :  Case No. 2:08-cv-682
Terry Collins, et al.,  :  JUDGE FROST
    Defendants.  :

## REPORT AND RECOMMENDATION

This action was filed by William Ridenour, a state prisoner, seeking declaratory and injunctive relief against the defendants, who include the Director of the Ohio Department of Rehabilitation and Correction and two representatives of the Ohio Adult Parole Authority. Mr. Ridenour contends that when he appeared for a parole hearing in 2008, he was denied parole based on statutes, regulations, or policies which were not in effect when he was convicted and sentenced in 1972. He claims that these new policies significantly increased the chance that he would serve a longer sentence and that their use in denying him parole violates the Ex Post Facto clause of the United States Constitution. He also asserts that some of the factors were improperly applied.

After answering, the defendants filed a motion for judgment on the pleadings. They raise four arguments in support of dismissal - that all of Mr. Ridenour's claims are barred by the Eleventh Amendment, that the Court lacks jurisdiction over the claims under the Rooker-Feldman doctrine, that *res judicata* bars his claims, and that he cannot assert violations of state law against the defendants in a federal court action. Motions to stay and to compel discovery have also been filed. For the following reasons, it will be recommended that the motion for

judgment on the pleadings be denied in part and granted in part, and that the discovery motions be disposed of based upon the Court's disposition of the motion for judgment on the pleadings.

I.

Defendants' first argument is that all of Mr. Ridenour's claims for injunctive and declaratory relief are barred by the Eleventh Amendment to the United States Constitution because he has sued each of the defendants in their official capacities. The Eleventh Amendment has been interpreted to preclude federal courts from exercising jurisdiction over suits against a State by citizens of that State absent the State's consent to be sued, or absent a valid Congressional abrogation of Eleventh Amendment immunity. Defendants contend that because all of them have been sued in their official capacities, the claims in the complaint are tantamount to claims against the State itself, and the Eleventh Amendment prevents this Court from hearing those claims.

This argument is, in the context of this case, plainly incorrect. In Ex parte Young, 209 U.S. 123, 159 (1908), the Supreme Court held that state officials can be sued in their official capacities for injunctive relief if they intend to "enforce a legislative enactment which is void because unconstitutional" and that the Eleventh Amendment does not prevent a federal court from hearing such a suit. This mechanism for testing the constitutionality of state statutes, regulations or actions in federal courts is probably the most frequent way in which such issues are raised and decided, and the Supreme Court has consistently reaffirmed the Ex parte Young principle. See, e.g., Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) ("To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law"); see also Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102 (1984) ("a suit challenging the constitutionality of a state official's action is not one against the State").

To be sure, the principle cited by the defendants does apply to actions for damages or other monetary relief. In Kentucky v. Graham, 473 U.S. 159 (1985), the Court provided a detailed explanation of the effect of suing state officials in either their official or individual capacities when money damages were the object of the suit. It held that such a suit against state officials in their official capacities was the equivalent of a suit against the state itself, and therefore, absent consent of the state to be sued, was subject to the provisions of the Eleventh Amendment, stating that "[t]he Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a **damages action** against a State in federal court." Id. at 169 (emphasis supplied). The Supreme Court reiterated, however, that its holding had no effect on the use of official capacity suits to obtain prospective relief, stating that "implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are **not** treated as actions against the State. See Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." Kentucky v. Graham, 473 U.S. at 167 n.14 (1985) (emphasis supplied).

Indeed, this distinction between suits for injunctive or declaratory relief, and suits for damages, is one of the most fundamental precepts relating to the intersection between the Eleventh Amendment and §1983 litigation, and it is not difficult to find cases from the Court of Appeals and this Court which recognize the distinction. See, e.g.,Wolfel v. Morris, 972 F.2d 712, 719 (6th Cir. 1992)("[T]he eleventh amendment is not a bar to injunctive relief against the defendants in their official capacities."); Dyer v. Radcliffe, 169 F.Supp. 2d 770, 777 (S.D. Ohio 2001) ("[A] suit for prospective injunctive relief against a state official in his or her official capacity is not subject to the Eleventh Amendment...."); Robertson v. Rosol, 2007 WL 2123764, *3 (S.D. Ohio July 20, 2007) (Frost, J.) ("The Eleventh

-3-

Amendment, however, does not bar suits against state officials in their official capacity seeking prospective injunctive relief to end continuing violations of federal law").

Defendants rely on two cases in the memorandum filed with their motion to support their argument. The first is an 1828 decision of the United States Supreme Court, <u>Governor of Georgia v. Madrazo</u>, 26 U.S. 110 (1828), which predates <u>Ex parte Young</u> by some eighty years. The second is <u>Shepherd v. Wellman</u>, 313 F.3d 963 (6th Cir. 2002), which, while of more recent vintage, involved a claim for money damages and not a suit for injunctive or declaratory relief. Obviously, neither of these cases is on point. Defendants would do well in the future not to advance an argument that has such a wealth of controlling case law opposing it.

## II.

Defendants next assert that the Court lacks jurisdiction to hear Mr. Ridenour's claims based on the <u>Rooker-Feldman</u> doctrine. That doctrine, in its simplest form, states that the United States District Courts do not have jurisdiction to hear appeals from the decisions of state courts; rather, such jurisdiction is vested exclusively in the United States Supreme Court by 28 U.S.C. §1257. Consequently, if an unsuccessful state court litigant comes to the District Court seeking review of the state court's rulings, jurisdiction is lacking.

As the Supreme Court recently noted, however, the doctrine is a fairly narrow one that had been unduly expanded by some courts to overlap with the doctrines of claim preclusion and issue preclusion. That expansion was incorrect. An unsuccessful state court litigant who brings to the federal courts the same dispute that was decided in state court may be subject to claim or issue preclusion defenses, but <u>Rooker-Feldman</u> does not apply unless the litigant claims an injury to his or her rights stemming from the state court decision itself, or asserts errors in the state court decision-making process. <u>See Exxon Mobil</u>

-4-

Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283 (2005)("The Rooker-Feldman doctrine ... is confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments").

Defendants acknowledge that Exxon Mobil and its progeny, such as Lawrence v. Welch, 531 F.3d 364 (6th Cir. 2008), have narrowed the reach of the Rooker-Feldman doctrine. As Lawrence explains, "the pertinent inquiry after Exxon is whether the 'source of injury' upon which plaintiff bases his federal claim is the state court judgment [itself]." Lawrence v. Welch, 531 F.3d at 368. The doctrine does not apply when the plaintiff simply asserts the same claim that was raised in the state court proceedings and identifies the source of his or her injury as the action of some third party - such as the state court defendant - rather than the state court judgment. See also Pittman v. Cuyahoga County Dep't of Children and Family Serv., 241 Fed.Appx. 285 (6th Cir. 2007). Nevertheless, defendants assert that the doctrine applies here because Mr. Ridenour litigated a similar issue concerning the retroactive application of parole guidelines in a state court case, Ridenour v. Randle, 96 Ohio St. 3d 90 (2002).

This argument does not withstand close examination. Mr. Ridenour's claim in this case is that the application of the current parole statutes, administrative code provisions, and other factors governing the grant or denial of parole, violates the Ex Post Facto clause of the United States Constitution because all of these statutes or regulations were put into effect well after the date of his conviction, which occurred in 1972. He specifically challenges the use of these factors at a parole hearing which occurred on May 23, 2008. Thus, the source of his injury is the actions of third parties, namely the defendants whom he has sued here, and not the 2002 decision of the Ohio

Supreme Court, which simply held that he was not entitled to a state writ of habeas corpus following the denial of his application for parole in January, 1999. Defendants' assertion that, were this Court to rule in Mr. Ridenour's favor, it would necessarily have to disagree with the earlier state court decision, is really the same erroneous interpretation of the Rooker-Feldman doctrine that Exxon Mobil rejected. See Exxon Mobil, 544 U.S. at 293 (Rooker-Feldman doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court").

III.

Defendants' third argument is that Mr. Ridenour's claims are barred by the doctrine of *res judicata*. This argument is based not only on the prior Ohio Supreme Court case, however, but upon the disposition of a prior federal court case in which Mr. Ridenour was a plaintiff. The federal case relied upon by the defendants in support of their assertion of the *res judicata* defense is Michael v. Ghee, a case filed in the United States District Court for the Northern District of Ohio in 2001.

The Court notes, as a preliminary matter, that motions for judgment on the pleadings ordinarily cannot be granted based upon consideration of matters outside the pleadings. Nevertheless, there is some authority for the proposition that the defense of *res judicata* is a legal defense that is not fact-dependent and therefore is appropriately considered in the context of a Rule 12(c) motion. See, e.g., Prusky v. Reliastar Life Ins. Co., 502 F.Supp. 2d 422, 427 n.9 (E.D. Pa. 2007). That does not eliminate the need to consider matters outside the pleadings, however, since the court filings or decisions needed to establish the elements of a *res judicata* defense do not ordinarily appear in the pleadings themselves. If those matters are public records of which the Court can properly take judicial notice, they may be considered when ruling on a motion for judgment on the pleadings.

See United States v. $244,320.00 in United States Currency, 295 F.Supp. 2d 1050, 1055-56 (S.D. Iowa 2003). Thus, to the extent that the defendants' *res judicata* argument rests entirely on matters of public record, the Court may consider it in the context of a motion for judgment on the pleadings.

Defendants have submitted only one document in support of their motion. It is a portion of the docket sheet from <u>Michael v. Ghee</u> showing that Mr. Ridenour was a plaintiff in that case. Their argument that the issues in that case are the same as the issues which Mr. Ridenour has raised here - which is one of the essential elements of a *res judicata* defense - rests entirely upon the reported Court of Appeals decision in the <u>Michael</u> case, which is found at 492 F.3d 372 (6th Cir. 2007). Thus, the Court must examine the claims raised and decided in that case, compare them to the complaint which Mr. Ridenour has filed here, and determine if Mr. Ridenour is raising the same or different issues.

One difference which is immediately apparent is that Mr. Ridenour's present complaint involves a 2008 parole hearing. Obviously, he could not have litigated any claims about that hearing in the <u>Michael</u> case. Nevertheless, defendants' res judicata defense might still have merit if the statutes, regulations and procedures which he claims were improperly applied to his current parole proceedings are the same statutes, rules and regulations involved in <u>Michael</u>.

According to the Court of Appeals' opinion, the claims raised by the <u>Michael</u> plaintiffs, all of whom were sentenced before July 1, 1996, were that "the lack of retroactivity of the new sentencing scheme [which became effective on July 1, 1996] and the implementation of the 1998 guidelines [adopted by the Ohio Adult Parole Authority] violate the Ex Post Facto, Due Process, and Equal Protection Clauses of the Constitution, as well as various provisions of state law." <u>Michael</u>, 498 F.3d at 374. The Court of Appeals' holding that is pertinent to this

case was that each individual plaintiff had failed in his burden to prove an Ex Post Facto violation; the Court cited "deficiencies in the plaintiffs' proofs" which led to the conclusion that "plaintiffs have not raised a genuine issue of material fact regarding whether the retroactive application of the 1998 guidelines creates a substantial risk of increased punishment of any member of the class." Id. at 385. The summary judgment issued to the defendants on this issue was therefore affirmed.

Mr. Ridenour's claim, as explained in his memorandum opposing the motion for judgment on the pleadings, is not identical to the claim raised and decided in Michael. He asserts, without contradiction, that the OAPA guidelines have been amended or revised on several occasions since Michael was filed, and that the guidelines applied to him in 2008 are not the same guidelines that were litigated in that case. He also asserts that O.R.C. §2967.13 was amended in 2002 and that the amendment of that statute, coupled with the new parole guidelines, have had the impermissible effect of increasing his sentence. Thus, he is not litigating the issue of whether the statutes and guidelines which governed parole when Michael was filed in 2001 are unconstitutional, but whether the amendments and revisions to those statutes and guidelines which were applied in 2008 suffer from constitutional infirmities.

The reply brief makes two different arguments in support of the dismissal of these claims on *res judicata* grounds. First, defendants assert that Mr. Ridenour's challenge to "those Guidelines" in Michael precludes his challenge to "those Guidelines" here - that is, that the same guidelines are at issue in both cases. As Mr. Ridenour points out, however, that is not true.

Second, apparently as an alternative argument, defendants seek to downplay the significance of the fact that Mr. Ridenour is not actually challenging the same statutory provisions and

guidelines which were at issue in Michael.  According to
defendants, because the Michael plaintiffs challenged the use of
some set of guidelines in parole proceedings, and the court in
that case decided that guidelines can be used in a constitutional
fashion, "[Mr. Ridenour] seeks to relitigate what has been
decided already."  They do not explain, however, how the Michael
court either could have, or did, decide the constitutionality of
guidelines which were not in existence when that case was filed.

   The mere fact that some set of parole guidelines has been
held constitutional in the past does not mean that the State can
simply amend those guidelines in any way it sees fit, and then
resist a challenge to the amended guidelines on *res judicata*
grounds.  Such a free pass for subsequent legislative or
regulatory amendments does not exist.  Consequently, the *res
judicata* argument fails because the issues raised in this Court
and in Michael are not the same.  See, e.g. Potts v. Zettel, 220
Fed.Appx. 559, 561 (9th Cir. February 2, 2007) (rejecting *res
judicata* argument in similar circumstances, holding that
"[b]ecause the ... legislature significantly amended [the statute
at issue in the case] ... subsequent to the [prior] judgment, ...
neither the claim nor the issues in the instant litigation are
substantially identical to those before the court in the prior
case").  The same reasoning applies to defendants' reliance on
Ridenour v. Randle, supra, the state court case in which Mr.
Ridenour challenged the denial of parole in 1999, because the
statutes or regulations at issue in that case have since been
amended.

                              IV.
   Defendants' final argument is directed only to Mr.
Ridenour's claim that the defendants did not properly follow
substantive and procedural dictates of Ohio law when they
considered him for parole in 2008.  They assert that these claims
are not actionable under 42 U.S.C. §1983 because, in order to
state a claim under that statute, the plaintiff must allege a

deprivation of rights secured by the constitution or laws of the United States, and not simply a violation of state law.  Mr. Ridenour does not address this argument in his response.

In Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984), the Supreme Court addressed the question of whether the same rationale which underlies Ex parte Young and permits a federal court to enjoin state officials from acting contrary to *federal* law allows those same courts, consistent with the Eleventh Amendment, to enjoin state officials from acting in a manner that contravenes *state* law.  The Court decided that the situations are different because no interest in maintaining the supremacy of federal law is involved in a case where the claim for relief rests entirely on state law.  Thus, the Court held that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when - as here - the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 116.  Since that is also the case here, to the extent that Mr. Ridenour seeks injunctive relief against the defendants in their official capacities based solely upon alleged violations of state law, his claim is barred by the Eleventh Amendment.  While it is not entirely clear that he seeks such relief, the Court should dismiss any state law claims that might be distilled from his complaint.

V.

For the foregoing reasons, it is recommended that the motion for judgment on the pleadings (#16) be denied as it relates to Mr. Ridenour's federal law claims, and granted as it relates to his state law claims, if any.  Because the defendants' motion to stay discovery is predicated on the pendency of their motion for judgment on the pleadings, if this recommendation is adopted, that motion (#17) should be denied.  Lastly, because defendants have stated that they will respond promptly to any outstanding discovery requests should their motion for a stay of discovery be denied, Mr. Ridenour's motion to compel discovery (#18) should be

denied as moot if this recommendation is adopted by the District Judge.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. Section 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp  
United States Magistrate Judge