IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


William L. Ridenour,               :

       Plaintiff,               :

      v.                         :     Case No. 2:08-cv-682

Terry Collins, et al.,             :     JUDGE FROST

      Defendants.                :


ORDER AND REPORT AND RECOMMENDATION

      William Ridenour, a state prisoner, filed this §1983 action
seeking declaratory and injunctive relief against the Director of
the Ohio Department of Rehabilitation and Correction, the Chief
of the Ohio Adult Parole Authority, and the Chairperson of the
OAPA.  The complaint also lists as defendants various unknown
parole board members and/or other officials.  All of the
defendants are sued in their official capacity only.

      Mr. Ridenour alleges that the defendants conducted his
parole hearing on May 23, 2008, in a constitutionally
impermissible manner by retroactively applying certain statutes,
regulations, and practices that were not in effect when he was
convicted and sentenced in 1972.  He seeks a declaration that
these new policies significantly increased the chance that he
would serve a longer sentence and that their use at his parole
hearing violated his rights under the Ex Post Facto clause of the
United States Constitution.  He also seeks an order requiring the
defendants to conduct a new parole hearing on his behalf
consistent with the law and customs that were in effect on April
10, 1972.

      Several motions are currently pending before the Court.
They include Mr. Ridenour's motion for extensions of time to
complete discovery and to file dispositive motions (#44), his

motions for the Court to take judicial notice (##47, 48), his
second motion to compel discovery (#53), and his motion for leave
to file an amended complaint (#64). The defendants have also
moved for summary judgment (# 54), and there are additional
pending motions related to the summary judgment motion. These
include the defendants' motion in limine to exclude various
exhibits attached to plaintiff's response (#66) and Mr.
Ridenour's motions to strike the affidavit of Cynthia Mauser
(#69) and to supplement the summary judgment record (#72). Mr.
Ridenour has also requested the clerk (#63) to provide him with a
copy of the exhibits attached to memorandum in opposition to the
defendants' motion for summary judgment. The Court will address
each of these motions in turn.

I.

A. Plaintiff's Motion to Extend Pretrial Deadlines

Fed.R.Civ.P. 16(b) requires the Court, in each civil action
that is not exempt from that rule, to "enter a scheduling order
that limits the time" to, inter alia, file motions and to
complete discovery. The rule further provides that "[a] schedule
shall not be modified except upon a showing of good cause ..."
Id.

Although the Court has broad discretion to modify its own
pretrial orders, it must be remembered that "[a]dherence to
reasonable deadlines is ... critical to maintaining integrity in
court proceedings," Rouse v. Farmers State Bank, 866 F.Supp.
1191, 1199 (N.D. Iowa 1994), and that pretrial scheduling orders
are "the essential mechanism for cases becoming trial ready in an
efficient, just, and certain manner." Id. at 1198. In
evaluating whether the party seeking modification of a pretrial
scheduling order has demonstrated good cause, the Court is
mindful that "[t]he party seeking an extension must show that
despite due diligence it could not have reasonably met the

-2-

scheduled deadlines." Deghand v. Wal-Mart Stores, Inc., 904
F.Supp. 1218, 1221 (D. Kan. 1995). The focus is primarily upon
the diligence of the movant; the absence of prejudice to the
opposing party is not equivalent to a showing of good cause.
Tschantz v. McCann, 160 F.R.D. 568, 571 (N.D. Ind. 1995). Of
course, "[c]arelessness is not compatible with a finding of
diligence and offers no reason for a grant of relief." Dilmar
Oil Co. v. Federated Mut. Ins. Co., 986 F.Supp. 959, 980 (D.S.C.
1997). Further, although the primary focus of the inquiry is
upon the moving party's diligence, the presence or absence of
prejudice to the other party or parties is a factor to be
considered. Inge v. Rock Financial Corp., 281 F.3d 613 (6th Cir.
2002). It is with these standards in mind that Mr. Ridenour's
motion for extension of time to complete discovery will be
decided.

Mr. Ridenour seeks to extend the deadline for completion of
discovery to November 30, 2009, and the deadline for filing his
motion for summary judgment to December 31, 2009. The defendants
object to this request except to the extent that these deadlines
are extended to June 30, 2009, and July 30, 2009, respectively.
The scheduling order entered on September 29, 2008, provided for
completion of discovery by May 31, 2009, and required any motions
for summary judgment to be filed no later than June 30, 2009.
Mr. Ridenour filed his motion to extend these deadlines on May
15, 2009.

At this point in the litigation, the discovery deadline has
passed and discovery is closed. The only additional discovery
which Mr. Ridenour identifies as necessary in order for him to
respond to the defendants' motion for summary judgment are the
parole statistics for those prisoners who were paroled in 1972.
The defendants have represented that no parole statistics
currently exist for years prior to 1977. Extending the discovery

-3-

period would, therefore, serve no useful purpose.

Mr. Ridenour likewise has failed to show good cause for extending the time for filing dispositive motions. The only basis for his request is that the defendants had not yet answered his first set of interrogatories and that their answers to his requests for admission were evasive. Mr. Ridenour, however, attached the defendants' answers to his interrogatories to his memorandum opposing summary judgment and he failed to identify which responses to his requests for admission were evasive. Furthermore, in his response to the defendants' motion, he asserts somewhat incongruously that there are genuine issues of material fact and that he is entitled to judgment in this case both as a matter of law and fact. He also submitted numerous exhibits which allegedly support this position. Given this extensive filing, the Court does not believe that additional time is needed for him to file his own summary judgment motion. If, in evaluating the defendants' motion, the Court concluded that there are no material factual disputes and that Mr. Ridenour is entitled to judgment, the Court could enter a judgment in his favor.

B. <u>Plaintiff's Motions to Take Judicial Notice</u>

Mr. Ridenour requests the Court to take judicial notice of the following "facts" pursuant to Fed.R.Evid. 201(d):

(1) Ohio Rev. Code §§2967.13(eff. 3-18-1965) and 2967.25(eff. 3-18-1969) established ten years as the maximum time he must serve before becoming eligible for parole;

(2) the defendants improperly applied Ohio Rev. Code §2903.02 (which was not in effect when he was sentenced) at his May 23, 2008 parole hearing to increase his minimum parole eligibility from ten years to fifteen years;

(3) Ohio Rev. Code §2967.25 (eff. 3-18-1969) provided that a prisoner serving consecutive sentences whose aggregate term

-4-

exceeded fifteen years was eligible for parole after ten years;

(4) the defendants improperly applied Ohio Rev. Code §2967.13 (eff. 6-13-2002) to Mr. Ridenour at his 2008 parole hearing so as to eliminate his eligibility for parole;

(5) Ohio Rev. Code §2967.03 (eff. 3-18-1965) required OAPA to assess factors relevant to a determination of whether parole "would further the interests of justice and be consistent with the welfare and security of society;"

(6) Ohio Rev. Code §2967.03 (eff. 11-23-05) limits the authority of the parole board to grant parole by requiring the board first to comply with the notice requirements of §§2930.16 and 2967.12 and to consider any written statement or testimony of the victim or victim's representative;

(7) Ohio Rev. Code §5149.101 (eff. 4-29-2005) provides that the office of victims' services to petition the parole board for a hearing before the entire board;

(8) Ohio Admin. Code §5120-1-1-07(B) (eff. 8-6-2007) adds the phrase "due to the serious nature of the crime" to the OAPA's criteria for determining whether parole "would further the interests of justice and be consistent with the welfare and security of society."

In a separate motion, Mr. Ridenour asks the Court to take judicial notice of the testimony of John Gerhardt and Beverly Seymour before the Senate Finance & Financial Committee of the 128th Ohio General Assembly on May 20, 2009, an article entitled "Many ex-cons turn their lives around" by Dawson Bell, and excerpts from a report by the former director of ODRC concerning "Violent Offender Incarceration and Truth-in-Sentencing Application." The defendants oppose both motions on the grounds that the matters of which the plaintiff seeks judicial notice do not meet the standards set forth in Fed.R.Evid. 201.

Rule 201 by its own terms "governs judicial notice of

adjudicative facts."  The rule further provides that the facts to
be noticed must not be subject to reasonable dispute and must
fall into one of two types.  The first kind involve facts that
are "generally known within the territorial jurisdiction of the
trial court."  The second are those facts "capable of accurate
and ready determination by resort to sources whose accuracy
cannot reasonably be questioned."  The requests for judicial
notice made by Mr. Ridenour fail to meet either of these
criteria.

    Mr. Ridenour's first motion for judicial notice centers on
Ohio statutes and regulations that were in effect either at the
time he was convicted and sentenced or when he came before the
parole board in 2008.  As the Sixth Circuit Court of Appeals has
pointed out, judges took judicial notice of statutes on a regular
basis for more than a hundred years.  See United States v.
Dedman, 527 F.3d 577, 586 (6th Cir. 2008).  "This was an
evidentiary shortcut whereby courts could rely upon the law of
other states without jumping through the evidentiary hoops of
bringing the bound volumes into court and establishing their
validity."  Id.  More recently, however, the concept of "judicial
notice" has been limited to facts alone, and "state law is simply
a matter for the judge to determine."  Id.; see also Swartz v.
Eastman & Smith, 194 F.3d 1314 (table), 1999 WL 811570 at *2 (6th
Cir. Sep. 28, 1999) (district court properly denied plaintiff's
request to take judicial notice of various procedural rules,
laws, and provisions of Code of Judicial Conduct as they did not
involve adjudicative facts).  The regulations which Mr. Ridenour
asks the Court to take notice of are matters of state law, and
the Court can and will use these regulations in making its
decision, but it does need formally to take judicial notice of
them.

    As for his second motion, the various articles and testimony

before the Ohio Senate committee clearly are not the kind of adjudicative facts contemplated by Fed.R. Evid. 201. Although the fact that these individuals testified before the committee or authored the papers in question may not be subject to reasonable dispute, the content of such testimony or articles is certainly open to question particularly since Mr. Ridenour is offering them as proof of the defendants' habits, customs, and practices. Moreover, these "facts" are neither generally known throughout the jurisdiction of the Court nor capable of ready and accurate determination.

C. Plaintiff's Second Motion to Compel

Mr. Ridenour complains that the defendants provided parole statistics from 1996 through 2008, but failed to comply with his requests for parole statistics from 1972 to 1996. He also objects to the defendants' redaction of several hundred pages of his parole file. In response to the plaintiff's second motion to compel, the defendants represent that, after further research, parole statistics related to the years 1977 and 1979-1997 were discovered and subsequently produced to Mr. Ridenour. The defendants assert, however, that after a thorough search, they were unable to locate any parole statistics that pre-date 1977. They further maintain that all redactions made to the plaintiff's parole file were done in accordance with administrative regulations in order to protect personal information and documents that might present a safety or security risk. The redactions included documents identifying the victim of any crime perpetrated by Mr. Ridenour, statements concerning the plaintiff made by informants, prosecutors, and judges, witness protection information, inmate separation information, juvenile criminal history, and diagnostic and testing of the plaintiff.

Mr. Ridenour did not reply to the defendants' memorandum in opposition to his second motion to compel. However, to the

extent he is still demanding that the defendants produce parole statistics for the years 1972-1976, the Court observes that a party cannot be compelled to produce documents that do not exist or which it does not possess or control. See Williams v. Schueler, 2006 WL 1728123 (E.D. Wis. June 23, 2006); Steil v. Humana Kansas City, Inc., 197 F.R.D. 445 (D. Kan. 2000)(citing Mike v. Dymon, No. Civ. A. 95-2405-EEO, 1996 WL 674007, at *1 (D. Kan. Nov. 14, 1996); Sunbird Air Servs., Inc. v. Beech Aircraft Corp., No. Civ. A. 89-2181-V. 1992 WL 739505, at *3 (D. Kan. Sept. 4, 1992)).  Consequently, his second motion to compel (#53) will be denied although should the defendants subsequently discover any earlier parole statistics, they shall be produced to Mr. Ridenour promptly.  The Court also finds that the redactions are appropriate, and that the redacted information appears largely irrelevant to Mr. Ridenour's claims.

D. Plaintiff's Motion for Copy of Document 57 and Attachments

Mr. Ridenour moves for an order directing the Clerk to provide him with a copy of his response in opposition to the defendants' summary judgment motion and his attached exhibits. He represents that he is unable to pay the estimated $77.00 copying charge and that, when he filed the document, he relied upon the alleged past practice of the Clerk to provide him with a time-stamped copy. He claims that many of the attachments are original exhibits that he will need in future proceedings in this action, including at trial.

Because the Court is recommending that the defendants' motion for summary judgment be granted, Mr. Ridenour's request that he be provided a copy of document #57 will be denied at this time.  Should summary judgment not be granted, the Court will reconsider his request at that time.

E. Plaintiff's Motion for Leave to File Amended Complaint

Mr. Ridenour seeks leave to amend his complaint in two ways.

First, he wishes to substitute Linda Janes, Chief of the OAPA, and Cynthia Mauser, Chairperson of the OAPA, as successors in office, for defendants Gary Croft and Harry Hageman. Second, he wants to add five new defendants and assert a new cause of action for damages against those defendants based on the separation of powers doctrine inherent in the United States Constitution. The new defendants would be sued under §1983 in their individual capacities.

The defendants oppose the motion for leave to amend in its entirety. They maintain that because defendants Croft and Hageman were named in their official capacities and have ceased to hold public office, their successors are automatically substituted as defendants under Fed.R.Civ.P. 25(d). Accordingly, there is no need for Mr. Ridenour to amend his complaint to achieve this end. The defendants also object to the addition of new defendants and the proposed new claim for relief for two reasons: (1) such an amendment would be futile since the separation of powers doctrine only applies to the executive, legislative, and judicial branches of the federal government, and any claim based on the separation of powers doctrine would not be cognizable against state officials under §1983; and (2) permitting the plaintiff to sue new defendants in their individual capacities after the deadlines for amendment of pleadings and discovery have passed and, more importantly, after the filing of their motion for summary judgment, would be highly prejudicial to them.

Fed.R.Civ.P. 15(a) states that when a party is required to seek leave of court in order to file an amended pleading, "leave shall be freely given when justice so requires." The United States Court of Appeals for the Sixth Circuit has spoken extensively on this standard, relying upon the decisions of the United States Supreme Court in Foman v. Davis, 371 U.S. 178

(1962) and <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321 (1971), decisions which give substantial meaning to the "when justice so requires." In <u>Foman</u>, the Court indicated that the rule is to be interpreted liberally, and that in the absence of undue delay, bad faith, or dilatory motive on the part of the party proposing an amendment, leave should be granted. In <u>Zenith Radio Corp.</u>, the Court indicated that mere delay, of itself, is not a reason to deny leave to amend, but delay coupled with demonstrable prejudice either to the interests of the opposing party or of the Court can justify such denial.

Expanding upon these decisions, the Court of Appeals has noted that:

> [i]n determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

<u>Phelps v. McClellan</u>, 30 F.3d 658, 662-63 (6th Cir.1994) (citing <u>Tokio Marine & Fire Insurance Co. v. Employers Ins. of Wausau</u>, 786 F.2d 101, 103 (2d Cir. 1986)). <u>See</u> <u>also</u> <u>Moore v. City of Paducah</u>, 790 F.2d 557 (6th Cir.1986); <u>Tefft v. Seward</u>, 689 F.2d 637 (6th Cir. 1982). Stated differently, deciding if any prejudice to the opposing party is "undue" requires the Court to focus on, among other things, whether an amendment at any stage of the litigation would make the case unduly complex and confusing, <u>see</u> <u>Duchon v. Cajon Co.</u>, 791 F.2d 43 (6th Cir. 1986) (per curiam), and to ask if the defending party would have conducted the defense in a substantial different manner had the amendment been tendered previously. <u>General Electric Co. v. Sargent & Lundy</u>, 916 F.2d 1119, 1130 (6th Cir.1990); <u>see</u> <u>also</u> <u>Davis v. Therm-O-Disc, Inc.</u>, 791 F. Supp. 693 (N.D. Ohio 1992).

The Court of Appeals has also identified a number of additional factors which the District Court must take into account in determining whether to grant a motion for leave to file an amended pleading. They include whether there has been a repeated failure to cure deficiencies in the pleading, and whether the amendment itself would be an exercise in futility. Robinson v. Michigan Consol. Gas Co., 918 F.2d 579 (6th Cir. 1990); Head v. Jellico Housing Authority, 870 F.2d 1117 (6th Cir. 1989). The Court may also consider whether the matters contained in the amended complaint could have been advanced previously so that the disposition of the case would not have been disrupted by a later, untimely amendment. Id.

Although motions to amend are evaluated under the standards in Fed. R. Civ. P. 15(a), which states that leave to amend shall be given freely when justice so requires, that rule cannot be read in isolation. Rather, as the Court of Appeals has recently pointed out in Leary v. Daeschner, 349 F.3d 888 (6th Cir. 2003), Rules 15(a) and 16(b) must be read together. Consequently, the Court is permitted to examine the standard factors governing amendments of the complaints under Rule 15(a) only if it is satisfied that any prior date for the filing of a motion for leave to amend either has been met or is properly extended under the good cause provisions of Rule 16(b).

The Court agrees with the defendants that the first branch of the plaintiff's motion to amend is unnecessary. Pursuant to Fed.R.Civ.P. 25(d), Linda Janes and Cynthia Mauser automatically were substituted as defendants when they succeeded to the positions of chief and chairperson of the OAPA, respectively. The Court, therefore, will deny this portion of the motion as moot.

As to the other branch of the motion to amend, the defendants have raised substantial doubt as to whether Mr.

Ridenour may assert a separation of powers claim against the proposed new defendants. The claim is based on the OAPA's alleged exercise of authority over the modification of sentences. Mr. Ridenour argues that under the Ohio Constitution this function is reserved solely to the judiciary branch. Thus, Mr. Ridenour appears to rely on state law, and not federal law for his separation of powers claim. The Sixth Circuit has held that a claim based on the separation of powers between a state trial judge and a state prosecutor is not cognizable under federal habeas corpus and is purely a matter of state law. Austin v. Jackson, 213 F.3d 298, 302 (6th Cir. 2000). The United States District Court for the Northern District of Ohio has applied this same principle to a §1983 action brought against the parole board by a prisoner for changing his offense category. See Louis v. Collins, No. 3:08 CV 930, 2008 WL 2705038 at *6 (N.D. Ohio Jul. 8, 2008).

Mr. Ridenour's assertion in his reply that his separation of powers claim is not based solely on §1983, but also on 42 U.S.C. §1988 does not appear to save his claim. Section 1988 simply "instructs federal courts as to what law to apply in causes of action arising under federal civil rights acts." Moor v. Alameda County, 411 U.S. 693, 703-04 (1973). It does not create an independent cause of action for alleged violations of constitutional rights. See Schroder v. Volcker, 864 F.2d 97, 98 (10th Cir. 1988); Harding v. American Stock Exchange, Inc., 527 F.2d 1366 (5th Cir. 1976). See also Otto v. Somers, 332 F.2d 697, 699 (6th Cir. 1964)(per curiam)(§1988 irrelevant to issues raised in taxpayer suit against municipal officials in absence of deprivation of federal right).

In addition, the Court believes that naming additional defendants and prosecuting the proposed separation of powers claim at this stage of the proceedings would add a level of

complexity to this case and cause unnecessary confusion.  What
began as an official capacity suit seeking merely declaratory and
injunctive relief would turn into a full-blown action in which
the new defendants could face individual liability for their
alleged deprivation of Mr. Ridenour's constitutional rights.
Such a change would spawn further litigation involving questions
such as the appropriate measure of damages and whether the
defendants would be entitled to qualified immunity.  Given these
additional considerations, the defendants would almost certainly
have conducted their defense differently had Mr. Ridenour
tendered his amended complaint prior to the deadline established
for amendment of pleadings.

The fact that Mr. Ridenour could have advanced his
separation of powers claim at a much earlier date also militates
against granting his motion for leave to amend.  Mr. Ridenour
concedes that the five defendants he seeks to add were "John Doe"
defendants identified in the complaint as unknown parole board
members and/or other officials.  The fact that he did not
discover until later the identity of the persons who allegedly
participated in his May 23, 2008 parole hearing does not excuse
his failure to plead his separation of powers claim at an earlier
date.  The facts supporting such a claim should have been
apparent to him at the time he commenced this action or soon
thereafter.

Lastly, Mr. Ridenour has not shown good cause for filing an
amended complaint at this stage of the proceedings.  Although the
scheduling order entered September 29, 2008, did not contain a
deadline for any amendments to pleadings, it did establish
deadlines for completion of discovery and the filing of any
summary judgment motions.  Mr. Ridenour did not file his motion
for leave to amend until these other deadlines had expired and
the defendants had already filed their motion for summary

judgment.

F. <u>Defendants' Motion to Bar Use of Inadmissible Evidence</u>

The defendants seek to exclude from consideration numerous exhibits attached to Mr. Ridenour's memorandum opposing summary judgment.  These exhibits consist of memoranda and statistical reports regarding the average time served by Ohio parolees for each calendar year from 1977 to 2007.  The defendants argue that the statistical exhibits are irrelevant because they are not tailored to the plaintiff's "unique" factual circumstances.  Mr. Ridenour offers the exhibits to show the likelihood of increased incarceration apparently caused by changes in parole policies since his conviction and sentence.

The standard for determining relevancy is "extremely liberal."  <u>United States v. Whittington</u>, 455 F.3d 736, 738 (6th Cir. 2006)(citation omitted).  In making this determination, a court must not consider the weight or sufficiency of the evidence.  <u>DXS, Inc. v. Siemens Medical Systems, Inc.</u>, 100 F.3d 462, 475 (6th Cir. 1996).  "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative value."  <u>Id.</u> (citation and internal quotation marks omitted).

While these exhibits encompass all parolees, Mr. Ridenour has highlighted the portions of the exhibits pertaining to male prisoners convicted of second degree murder.  Because this is the most serious of the offenses for which he was convicted and sentenced, Mr. Ridenour has clearly made an effort to tailor the statistics to parolees in circumstances similar to his.  Although the parolees may not have been convicted of other serious offenses or escape, as has Mr. Ridenour, the Court cannot say that the statistics have no probative value.

The defendants also challenge a number of other exhibits as

inadmissible due to Mr. Ridenour's alleged failure to authenticate them. The exhibits can be grouped into two general categories. The first includes copies of either current or former statutes and regulations, as well as cases decisions relied upon by Mr. Ridenour. The second group appears to comprise letters, memoranda, and check sheets prepared by various employees of the ODRC and the parole board and Mr. Ridenour's sentencing entry.

It appears that these statutes and regulations are the same as those which were the subject of Mr. Ridenour's first motion for judicial notice. While the Court will determine the extant state law, the defendants have not argued that the copies of the statutes, regulations, and court decisions attached to the plaintiff's memorandum are not what they purport to be. Furthermore, it is not clear that Mr. Ridenour is even offering them as "evidence." The other documents which the defendants challenge may well have been produced by them in discovery. Courts have held that where a document is produced in discovery, there may be sufficient circumstantial evidence to support its authenticity. See Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1423 (10th Cir. 1991); see also Anand v. BP West Coast Products LLC, 484 F.Supp.2d 1086, 1092 n. 11 (C.D. Cal. 2007)(documents produced in response to discovery requests admissible on summary judgment motion as self-authenticating); Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc., 46 F.Supp.2d 769, 772 (N.D. Ill. 1999) (same). Accordingly, the Court will deny the defendants' motion in limine (#66).

G. Plaintiff's Motion to Strike Affidavit of Cynthia Mausser

Mr. Ridenour moves to strike the affidavit of Cynthia Mausser attached to the defendants' reply in support of their motion for summary judgment. He contends that because Ms. Mauser

did not participate in his May 23, 2008, parole hearing, she has no personal knowledge as to what happened there. Mr. Ridenour also asserts that Ms. Mausser's affidavit contradicts certain specific admissions she purportedly made contained in Exhibits FF and GG, and that these admissions should be the only testimony from her which should be considered by the Court on the summary judgment record. He further objects to the absence of sworn or certified copies of OAC 5120:1-7(B)(8), "review of records," Senate Bill 2, and the case of <u>Ankrom v. Hageman</u>, 2005-Ohio-1546 (10th App. Dist. 2005) to which she referred in the affidavit.

Rule 56 of the Federal Rules of Civil Procedure provides in relevant part:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.

Fed.R.Civ.P. 56(e)(1).

Under Rule 56(e), an affidavit must show that the facts stated therein are based on personal knowledge. <u>See</u> <u>Reddy v. Good Samaritan Hosp. & Health Ctr.</u>, 137 F.Supp.2d 948, 956 (S.D. Ohio 2000). In this case, Ms. Mausser avers that her knowledge of Mr. Ridenour's history and of the reasons for which he was denied parole derives from her review of records of regularly conducted business activity as chairperson of the OAPA. Attached to her affidavit is a certified copy of the Ohio Parole Board's decision to deny Mr. Ridenour parole following a May 23, 2008 hearing.

Personal knowledge is not strictly limited to actions in which the affiant directly participated, but may be derived from reviewing the content of files and records. <u>See</u> <u>Washington Central R.R. Co. v. National Mediation Bd.</u>, 830 F.Supp. 1343,

1353 (E.D. Wash. 1993).  Under this criterion, the Court is
satisfied that Ms. Mausser's affidavit is based on her personal
knowledge of the records of Mr. Ridenour's parole hearing.  To
the extent some portions of the affidavit may not be based on
personal knowledge, the proper remedy would not be to strike the
entire affidavit, but for the Court simply to disregard those
portions.  See Lee v. City of Columbus, -- F.Supp.2d --, 2009 WL
2145929 at *5 (S.D. Ohio Sep. 4, 2009) (citing United States v.
Hodges X-Ray, Inc., 759 F.2d 557, 561 (6th Cir. 1985)).

        The Court also does not agree that Ms. Mausser's statement
in her affidavit that the parole board did not consider OAC
5120:1-1-7(B)(8) at Mr. Ridenour's May 23, 2008 hearing
contradicts the defendants' response to his request for admission
that the OAPA members and/or their agents applied the parole
standard, statutes, rules, and guidelines that were in effect at
the time of the hearing.  It is not clear that the members are
obliged to apply this subpart to cases such as Mr. Ridenour's
where the Senate Bill 2 equivalent sentence would be longer than
the original sentence imposed.

        Lastly, the Court is authorized to apply Rule 56(e) with
some leniency.  See Jones v. Rabanco, Ltd., 439 F.Supp.2d 1149,
1158 (W.D. Wash. 2006).  It is apparent from the memoranda he has
filed in this case that Mr. Ridenour is familiar with OAC 5120:1-
1-7(B)(8), Senate Bill 2, the Ankrom decision, and the relevant
documents from his parole file, and, in fact, has his own copies
of these papers.  Given the lack of prejudice to Mr. Ridenour
from the defendants' failure to attach the papers to Ms.
Mausser's affidavit, the Court will not strike the affidavit on
account of their failure strictly to comply with Fed.R.Civ.P.
56(e).

H. Plaintiff's Motion to Supplement Summary Judgment Record
        Mr. Ridenour seeks to supplement the summary judgment record

with Plaintiff's Exhibits B and C, as well as the affidavit of
Tony Leroy Logsdon.  The two exhibits are certified copies of the
<u>Ankrom</u> screening criteria and the cental office review board's
May 23, 2008 decision as to his parole.  Mr. Logsdon is an
individual who was convicted of two counts of second degree
murder in 1973 and was sentenced to consecutive life sentences
for each offense.  Mr. Logsdon was granted parole in May 2003 and
released the following month after serving thirty years and six
months.  Mr. Ridenour asserts that the case of Mr. Logsdon
establishes an incarceration standard of fifteen years in 2003
for each conviction under R.C. §2901.05, the same statute of
which he was convicted.  Mr. Ridenour believes that the notation
on Exhibit C by one of the board members that he wanted the
plaintiff to serve forty years is evidence that the current
standard is twenty years per conviction.

The defendants do not object to the admission of Plaintiff's
Exhibits B and C.  They contend, however, that Mr. Logsdon's
affidavit is inadmissible on the grounds that it is irrelevant.
As the Court noted earlier with respect to the parole statistics
offered by Mr. Ridenour, even if it believes the evidence in the
form of Mr. Logsdon's affidavit is insufficient to prove the
ultimate point for which it is offered, it may not exclude the
evidence if it has the slightest probative value.  Again, the
Court can give this evidence whatever weight it deserves.
Accordingly, the plaintiff's motion to supplement the summary
judgment record (#72) will be granted.

II.

Summary judgment is not a substitute for a trial when
facts material to the Court's ultimate resolution of the case
are in dispute.  It may be rendered only when appropriate
evidentiary materials, as described in Fed.R.Civ.P. 56(c),
demonstrate the absence of a material factual dispute and the

-18-

moving party is entitled to judgment as a matter of law.
Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464
(1962).  The moving party bears the burden of demonstrating
that no material facts are in dispute, and the evidence
submitted must be viewed in the light most favorable to the
nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144
(1970).  Additionally, the Court must draw all reasonable
inferences from that evidence in favor of the nonmoving party.
United States v. Diebold, Inc., 369 U.S. 654 (1962).  The
nonmoving party does have the burden, however, after completion
of sufficient discovery, to submit evidence in support of any
material element of a claim or defense on which that party would
bear the burden of proof at trial, even if the moving party has
not submitted evidence to negate the existence of that material
fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986);
Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course,
since "a party seeking summary judgment ... bears the initial
responsibility of informing the district court of the basis for
its motion, and identifying those portions of [the record] which
it believes demonstrate the absence of a genuine issue of
material fact," Celotex, 477 U.S. at 323, the responding party is
only required to respond to those issues clearly identified by
the moving party as being subject to the motion.

III.

Mr. Ridenour was charged in an indictment with two counts of
murder in the first degree (counts one and two), one count of
shooting with intent to kill (count three), and two counts of
assault with a deadly weapon (counts four and five).  On April
10, 1972, he appeared before a three-judge panel in the
Montgomery County Common Pleas Court.  At that appearance, he
changed his plea of not guilty to counts one and two and entered
guilty pleas to the lesser included offenses of murder in the

second degree.  Mr. Ridenour also withdrew his not guilty pleas
to counts three, four, and five, and entered pleas of guilty to
those offenses as charged in the indictment.  The court accepted
his guilty pleas and sentenced him to two life terms on counts
one and two.  As to count three, the court imposed an indefinite
sentence of one to twenty years.  On counts four and five, Mr.
Ridenour received sentences of one to five years each.  The court
further ordered that all sentences were to be served
consecutively.  See Plaintiff's Exhibit HH.

Mr. Ridenour subsequently escaped from prison, and after
being recaptured, was convicted in May 1978 of two counts of
kidnaping, one count of felonious assault, one count of
aggravated burglary, and one count of escape.  He received an
aggregate sentence of four to twenty-five years to be served
consecutively to his 1972 sentence.  See Defendants' Exhibit 1,
Affidavit of Cynthia Mausser ¶3.  Since his escape in 1977, Mr.
Ridenour has not been cited for any disciplinary conduct.  See
Ohio Parole Board Decision attached to Defendants' Reply (doc.
65).  While in prison, he has completed a number of vocational
and educational programs, including associate's and bachelor's
degrees in computer operation, stress management, assertiveness
training, and substance abuse programming.  Id.

Mr. Ridenour remains incarcerated at the Chillicothe
Correctional Institution in Chillicothe, Ohio.  He first became
eligible for parole in 1982 after serving ten years.  See Ohio
Rev. Code 2967.13(F).  His most recent parole hearing was
conducted on May 23, 2008, at which time he was again denied
parole.  See Affidavit of William L. Ridenour ¶¶ 3, 19, 20.  The
board applied the parole standards, statutes, rules and
guidelines to Mr. Ridenour that were in effect on May 23, 2008,
including Ohio Rev. Code Chapter 2967 and Ohio Admin. Code
§§5120:1-1-07, 5120:1-1-10, and 5120:1-1-11.  See Defendants'

Answer to Plaintiff's Second Set of Requests for Admission No. 1
(Plaintiff's Exhibit FF p. 3) and Defendants' Responses to
Plaintiff's First Set of Interrogatories Nos. 7, 8, 10
(Plaintiff's Exh. JJ). The board found that the multiple
victims, coupled with the escape involving an assault and
kidnaping, were aggravating factors that outweighed Mr.
Ridenour's completion of a number of institutional programs and
his excellent conduct for the past thirty years. The board,
therefore, did not consider him suitable for release at that time
and recommended a continuance of four years. See Ohio Parole
Board Decision. The board checked one of the three boxes on the
decision sheet corresponding to the reasons cited in AR 5120:1-1-
07 for further incarceration:

> There is substantial reason to believe that due
> to the serious nature of the crime, the release
> of the inmate into society would create undue risk
> to public safety, or that due to the serious nature
> of the crime, the release of the inmate would not
> further the interest of justice or be consistent
> with the welfare and security of society.

Ohio Admin. Code §5120:1-1-07 (A)(2). Mr. Ridenour's next
scheduled parole hearing is May 1, 2012. See id. p.2

IV.

The State of Ohio may not impose ex post facto laws. See
U.S. CONST. Art. I, §10, cl. 1. Two elements comprise an ex post
facto law: (1) it must apply to conduct that occurred before its
enactment and (2) its application must adversely affect the
offender. See Dyer v. Bowlen, 465 F.3d 280, 285 (6th Cir. 2006).
The relevant inquiry here is whether the parole board's
application of the Ohio statutes and guidelines in effect on May
23, 2008, in its consideration of Mr. Ridenour's suitability for
parole, "create[d] a sufficient risk of increasing the measure of
punishment" for his crimes. Michael v. Ghee, 498 F.3d 372, 384
(6th Cir. 2007)(citation and internal quotation marks omitted).

Mr. Ridenour can establish an ex post facto violation by demonstrating that retroactive application of the statutes and guidelines on their face created a significant risk of increased incarceration. Id. Alternatively, if the statutes and guidelines do not by their own terms manifest a significant risk, he can prove such a violation through evidence drawn from the parole board's practical implementation of these statutes and guidelines should that evidence show that their application resulted in a longer period of incarceration than would have been the case under the statutes and guidelines in effect at the time of his conviction and sentence. Id.; Dyer, 465 F.3d at 288.

Mr. Ridenour asserts that five different ex post facto violations occurred because five different statutes, regulations, and guidelines in effect at the time of his May 23, 2008 parole hearing, but not at the time of sentencing, were applied to determine his eligibility and/or suitability for parole. He asserts that each of these created a significant risk of prolonging his incarceration. Mr. Ridenour also contends that the parole board's practical implementation of each of these statutes, regulations, and guidelines at his parole hearing resulted in his serving a period of incarceration longer than he would have faced under the parole standards and practices in effect on April 10, 1972.

A. Retroactive Application of OAC §5120:1-1-07

Mr. Ridenour correctly notes that Ohio Admin. Code §5120:1-1-07 did not exist at the time of his original conviction and sentence in 1972. The earliest version of this regulation had an effective date of October 15, 1975. See Defendants' Exh. 5. Its promulgation rescinded Administrative Regulation 911, filed on September 23, 1975. See Ohio Admin. Code 5120:1-1-07(B) (Exh. 5). Neither party submitted a copy of Administrative Regulation 911, and the Court in its own legal research could not locate it.

It is, therefore, not known whether any version of AR 911 pre-
dated September 23, 1975. The October 15, 1975 version of OAC
5120:1-1-07, however, was apparently in effect at the time of Mr.
Ridenour's subsequent conviction and sentence in 1978.

Mr. Ridenour argues that on their face two provisions of the
January 1, 2007 version of OAC 5120:1-1-07 create a significant
risk of increased incarceration. The first permits the parole
board to determine that an inmate not be released at the time of
his parole eligibility where there is substantial reason to
believe that, <u>due to the serious nature of the crime</u>, the release
would create an undue risk to public safety or would not further
the interest of justice nor be consistent with the security and
welfare of society. Ohio Admin. Code §5120:1-1-07(A)(2)
(emphasis added). The second provision is the requirement that
the board consider the equivalent sentence range under Senate
Bill 2 (eff. 7-1-96) for the same offense of conviction <u>if</u>
<u>applicable</u>. Ohio Admin. Code §5120:1-1-07 (B)(8) (emphasis
added).

Mr. Ridenour's contention that OAC 5120:1-1-07(A)(2)
constitutes an ex post facto law rests on his assertion that the
"serious nature of the crime" factor was not part of the previous
parole scheme. This language, however, was present in the
original version of OAC 5120:1-1-7(A)(2) which became effective
on, October 15, 1976. <u>See</u> Defendants' Exh. 5. Similarly, OAC
§5120:1-1-08 (eff. 12-21-1976) listed the nature of the crime for
which the inmate was convicted as a factor to be considered by
the parole board at a release hearing.

Even before these guidelines were enacted, however, the
parole board appropriately considered such factors as an inmate's
prior criminal record. <u>See</u> <u>Jones v. Salisbury</u>, 422 F.2d 1326,
1327 (6th Cir. 1970). "Such consideration does not constitute an
imposition of additional punishment, but rather an attempt to

assess the factors relevant to a determination of whether parole 'would be consistent with the welfare and security of society.'" Id. (quoting Ohio Rev. Code §2967.03). Jones has been cited for the proposition that it is not arbitrary or capricious for the parole board to consider the "nature of the crime" to determine whether an inmate should be released. See Coleman v. Ohio Adult Parole Authority, 238 F.3d 420 (table), 2000 WL 1871680 at *2 (6th Cir. Dec. 11, 2000); see also Riley v. Perini, 422 F.2d 397 (6th Cir. 1970)(parole authority may consider all relevant factors).

The Ohio Supreme Court has held that the seriousness of the inmate's offense is good cause for the parole board to continue his parole hearing for ten years. State ex rel. Ferguson v. Ohio Adult Parole Authority, 45 Ohio St.3d 355 (1989). That court has also held that the board may consider the fact that a prisoner had tried to escape and that, regardless of the basis for continuing parole consideration until a later date, such a continuance does not constitute a sentence by the parole board. Barnhart v. Maxwell, 2 Ohio St.2d 308, 309 (1965). It appears, then, that the parole board has for many years considered both the nature of the crime and the offender's conduct as relevant factors in determining whether to grant parole. Accordingly, Mr. Ridenour has not shown that the "serious nature of the crime" provision created on its face a significant risk of increased incarceration to an inmate convicted and sentenced prior to October 15, 1976.

The 1995 sentencing reforms heralded by Senate Bill 2 abolished indeterminate prison sentences in Ohio except for life imprisonment. See Ohio Rev. Code §2929.14(A). The amended sentencing provisions by their express terms do not apply to persons convicted and sentenced prior to July 1, 1996. See State ex rel. Lemmon v. Ohio Adult Parole Authority, 78 Ohio St.3d 186, 187-88 (1997). Because OAC 5120:1-1-07(B)(8) requires the parole

board to consider the equivalent sentence range under Senate Bill 2 for the same offense of conviction only if the equivalent sentencing range is applicable, this provision does not on its face create a significant risk of increased incarceration to an inmate serving a life sentence. There simply is no equivalent sentencing range under Senate Bill 2 for a life sentence imposed on an inmate before July 1, 1996.

Mr. Ridenour argues the fact that the Ohio Parole Board's Decision (Plaintiff's Exh. K) actually lists a range of 480-life plus 72-252 months in the box corresponding to the equivalent Senate Bill 2 sentencing range means that the current parole standard was applied to him rather than the standard in effect when he was convicted and sentenced. Mr. Ridenour asserts that under the earlier standard, the average time served for a hypothetical inmate convicted of the same offenses for which he was imprisoned would have been 37.21 years. His calculations are based on "A Comparison of Time Served, in Years, of Male Penitentiary Parolees in 1982 by Offense Category." See Plaintiff's Exhibit II, Table 2. Mr. Ridenour has selected the average time served for each offense for which he was convicted (or what he apparently believes to be the most analogous offense where his actual crime is not listed), multiplied that by the number of counts, and then combined those totals to arrive at the 37.21 years.

The defendants argue that Mr. Ridenour's statistical analysis is seriously flawed, but that, if anything, his analysis proves that an inmate with as many felony convictions as the plaintiff should expect to serve an average of 37.21 years. They point out that Mr. Ridenour has only now reached that threshold and had not done so at the time of his May 23, 2008 parole hearing.

The defendants also contend that he misapprehends how the

OAPA applies OAC §5120:1-1-07(B)(8). They maintain that the box on the parole decision sheet for the equivalent Senate Bill 2 sentencing range was added as the result of the Ohio court of appeals' decision in <u>Ankrom v. Hageman</u>, 2005 WL 737833 (Ohio App. 10 Dist. Mar. 31, 2005). The defendants construe <u>Ankrom</u> as holding, in part, that where the minimum term of the Senate Bill 2 equivalent sentencing range is shorter than the minimum prison term prior to July 1, 1996, the parole board should take that fact into account when considering an inmate's suitability for parole. The defendants assert that where the minimum term of the Senate Bill 2 equivalent sentencing range is longer than the minimum sentence imposed prior to 1996, the parole board routinely gives this factor no consideration. <u>See</u> Mausser Affidavit ¶¶4, 5 (Exh. A attached to Defendants' Reply). Because Mr. Ridenour's situation fell into the second category, the board did not consider OAC §5120:1-1-07(B)(8) at his May 23, 2008 parole hearing. <u>Id</u>.

The Court believes the arguments advanced by the parties are more properly considered in the context of whether Mr. Ridenour has come forward with evidence, drawn from the parole board's practical implementation of OAC §5120:1-1-07(B)(8), to show that the application of this provision to his case resulted in a longer period of incarceration than he would have served under guidelines in effect at the time of his conviction and sentence. The Court concludes that he has not. The only evidence in the record is that the parole board did not consider OAC §5120:1-1-07(B)(8) at Mr. Ridenour's May 23, 2008 parole hearing.

B. Retroactive Application of R.C. §2967.13

Mr. Ridenour argues that the OAPA retroactively applied the provisions of Ohio Rev. Code §2967.13 (eff. 6-13-2002) to him at his May 23, 2008 parole hearing, and that the application of this statute coupled with the 2007 parole guidelines significantly

constrict his opportunity for early release. Under the 2002
version of §2967.13, an inmate does not become eligible for
parole until the expiration of the aggregate of the minimum terms
of his sentence. Under the version of §2967.13 in effect when
Mr. Ridenour was convicted and sentenced, an inmate serving a
life sentence or minimum terms of imprisonment longer than
fifteen years, whether consecutive or otherwise, was eligible for
parole after ten years. See Ohio Rev. Code §2967.13 (eff. 3-18-
1965).

Mr. Ridenour's claim that the OAPA retroactively applied the
2002 version of §2967.13 to him is based on two references to his
minimum sentence as Life. In Plaintiff's Exhibit A, the
aggregate minimum sentence, the aggregate maximum sentence and
the maximum expiration date are all listed as Life. In
Defendant's Exhibit 1, Cynthia Mausser states that "[b]ecause
Inmate Ridenour is serving a minimum life sentence, the 2007
Guidelines do not suggest a range of time that Plaintiff must
serve before parole should be granted." See Mausser Aff. ¶6.

The Court does not see how these references show that the
OAPA retroactively applied the 2002 version of §2967.13 to Mr.
Ridenour. It is unclear what effect such application would have
had on his parole eligibility. A life sentence by definition
does not appear to have a minimum term. Moreover, Mr. Ridenour's
eligibility for parole after serving ten years has never
seriously been in question.

Mr. Ridenour also points out that the 2007 Parole Guidelines
(Plaintiff's Exh. F) changed the classification of murder from a
Category 11 or 12 to Category 13. The corresponding guideline
range for Category 11 or 12 was expressed in terms of months
while the guideline for Category 13 reflects Life at the high end
of the ranges. By making this change, the OAPA intended to
remove any previous impression or presumption that an inmate

convicted of murder will be released after serving a definitive
amount of time.  The 2007 guideline also states that any
"distinctions between the seriousness of the offenses will be
addressed by the different minimum sentences required to be
served before parole release eligibility, and when determining
release suitability."  Mr. Ridenour relies on these last five
words to assert that the 2007 Parole Guidelines were applied
impermissibly to determine his lack of parole suitability.

Mr. Ridenour's argument fails for two reasons.  First, he
has not shown that the parole board even considered the 2007
Parole Guidelines when it determined he was not suitable for
release.  Second, if the 2007 Parole Guidelines were applicable,
the maximum end of the guideline range would be Life, which also
is the maximum sentence for a person convicted of murder in the
second degree.  Accordingly, there is no applicable guideline
range for Mr. Ridenour other than the indefinite sentence imposed
by the Montgomery County Common Pleas Court.  Without such a
suggested range, there is no basis for Mr. Ridenour's claim that
he faces a significant risk of serving longer than he would have
under the parole standards in effect at the time of his
conviction and sentence.  See Nur v. Mausser, No. 1:08 CV 110,
2008 WL 1775249 at *3 (N.D. Ohio Apr. 15, 2008).

C. Retroactive application of R.C. §2903.02

Mr. Ridenour claims that the OAPA also retroactively applied
O.R.C. §2903.02 to him at his May 23, 2008 parole hearing.  He
bases this argument on the fact that the decision sheet lists
§2903.02 as one of the offenses of which he was convicted.  See
Plaintiff's Exh. K.  Ohio Rev. Code §2903.02 provides that "[n]o
person shall purposely cause the death of another" and that
"[w]hoever violates this section is guilty of murder."  Mr.
Ridenour was actually convicted of murder in the second degree
under former O.R.C. §2901.05, the punishment for which was life

imprisonment. The punishment for committing murder in violation of O.R.C. §2903.02 is an indefinite term of fifteen years to life. See Ohio Rev. Code §2929.02. A person convicted of murder would not be eligible for parole until he had served a minimum of fifteen years whereas a person convicted of murder in the second degree became eligible for parole after ten years. Compare Ohio Rev. Code §2967.13 (eff. 6-13-2002) with former §2967.13 (eff. 3-18-1965).

The problem with Mr. Ridenour's argument is that he indisputably became eligible for parole in 1982 after serving ten years. Therefore, retroactive application of §2903.02 does not on its face create a significant risk of increased incarceration for an inmate convicted of murder in the second degree. In fact, as Mr. Ridenour concedes, there is nothing in this statute to indicate that the legislature intended it to apply retroactively. Furthermore, there is no evidence that the parole board denied Mr. Ridenour's release because it considered him ineligible for parole. But even had the board applied §2903.02 to Mr. Ridenour at his May 23, 2008 hearing, there would have been no practical effect because he had already served more than fifteen years.

D. Retroactive Application of Violent Offender Policies

Mr. Ridenour argues that the policies created by the OAPA allegedly in response to the "Violent Crime Control and Law Enforcement Act of 1994," 42 U.S.C. §13701 et seq., have created a sufficient risk of increasing the punishment attached to his offenses. He points to the certification by Director Wilkinson dated August 12, 1996, that the State of Ohio "has implemented, or will implement, correctional policies and programs, including Truth-in-Sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed..." See Plaintiff's Exh. E. He contends that Departmental Policy 105-PBD-03 (Plaintiff's Exh. R), while not actually referring to the

Act or tracking its language, incorporates the basic principles of the federal statute.  He also maintains that the OAPA incorporated this same violent offense classification and departmental policy into its 2007 Parole Guidelines.

The Court finds that Mr. Ridenour has failed to establish a genuine issue of material fact that Director Wilkinson's statutory assurance that Ohio has implemented or will implement correctional programs to ensure that offenders serve a substantial portion of their sentences has created a significant risk of prolonging his punishment.  Mr. Ridenour concedes that Ohio has not adopted its own violent offender legislation.  See Shaw v. Frank, No. 05-C-0872, 2008 WL 283007 at *11 (E.D. Wis. Jan. 31, 2008), aff'd, 288 Fed.App'x 299 (7th Cir. 2008)(court rejected ex post facto argument based on Wisconsin's similar statutory assurance where plaintiff submitted no proof that any laws were enacted pursuant to this agreement).  Moreover, it is difficult to conceive how a law or policy ensuring that violent offenders serve at least 85% of their sentences would have affected Mr. Ridenour since he is serving a life term.  See Complaint ¶24.

The Court likewise finds that Mr. Ridenour has failed to establish a genuine issue of material fact that either Departmental Policy 105-PBD-03 or the 2007 Parole Guidelines creates a risk of increasing his incarceration.  For instance, one of the portions highlighted in Plaintiff's Exhibit R instruct the parole board to give "special attention to certain inmates and certain offenses to ensure public safety and public confidence."  There is no evidence that this guideline was promulgated as a result of any agreement between Ohio and the federal government stemming from the Violent Crime Control and Law Enforcement Act of 1994.  Such considerations have always been part of the OAPA's discretion to grant or deny release.  See

former Ohio Rev. Code §2967.03 (eff. 3-18-1965).  More
importantly, Mr. Ridenour has not shown that these policies were
actually applied to him or had any affect on the parole board's
decision on May 23, 2008, to deny his release.  Even had such
policies been applied, the mere fact that a state has become less
willing to release violent offenders and "now demands assurance
that interests in deterrence, desert, and public safety have been
satisfied before a murderer will be let free" does not implicate
the ex post facto clause where an open-ended parole system is
based on the board's discretion.  Grennier v. Frank, 453 F.3d
442, 445 (7th Cir. 2006).

E. Retroactive Application of Ohio's Victims' Rights Statutes

Mr. Ridenour also claims that Ohio's victims' rights
statutes create a sufficient risk of increasing punishment for
his crimes.  Ohio Rev. Code §2967.12(B) requires the OAPA to
notify a victim's representative of an inmate's impending
release, if such notification has been requested.  Under certain
circumstances, a victim's representative may request a full board
hearing and may have the right to testify at such a hearing.

There is some evidence that one or more victims'
representatives may have participated in some fashion in Mr.
Ridenour's May 23, 2008 hearing.  See Plaintiff's Exhibits L and
X.  This Court has previously held, however, that these statutory
requirements are merely procedural and that the parole board
retains its full discretion to grant or deny release.  See Clumm
v. Warden, Chillicothe Correctional Institution, No. 2:08-cv-365,
2008 WL 4346797 at *3.  "A law that is merely procedural and does
not increase a prisoner's punishment cannot violate the Ex Post
Facto Clause even where applied retrospectively."  Id. (citations
and internal quotation marks omitted).

F. Practical Implementation of Current Parole Statutes,
Regulations, Guidelines, and Policies

Mr. Ridenour's final argument is that the practical

-31-

implementation of the current parole statutes, Ohio Admin. Code
§5120:1-1-07, the victims' rights statutes, the violent offender
policies, and Ohio Rev. Code §2903.02 at his May 23, 2008 parole
hearing resulted in his serving a longer period of incarceration
than under the parole standards and practices which were in
effect on April 10, 1972.  He bases this contention on parole
statistics from 1977 to 2007 showing an increase in time served
for second degree murder and murder.

The defendants counter that this statistical evidence is not
sufficiently tailored to Mr. Ridenour's circumstances and is
therefore irrelevant.  See, e.g., Dyer, 465 F.3d at 292 (case
remanded for evidentiary hearing on plaintiff's claims with
discovery limited to class of inmates with comparable convictions
and sentences); Dotson v. Collins, 317 Fed.App'x 439, 442 (6th
Cir. 2008)(plaintiff unable to obtain statistics showing that
inmates situated similarly to him received longer sentences
following change in guidelines because State controlled
information necessary to create such statistics).  They also
question Mr. Ridenour's methodology of adding together the
average time served for each of his ten offenses to arrive at
what he would regard as the average time served by an inmate
convicted of these crimes.

The Court agrees that Mr. Ridenour's statistics regarding
time served by inmates convicted of murder and subsequently
released fails to account for the other serious offenses of which
he was convicted.  The Court also agrees that his methodology
using average time served for each of his offenses is flawed.
Table 2 in Plaintiff's Exhibit II does not include offense
categories for shooting with intent to kill or assault with a
deadly weapon.  Mr. Ridenour instead uses the average time served
for felonious assault and aggravated assault, respectively,
without explaining why such categories are appropriate.  For

-32-

these reasons, the Court does not view Mr. Ridenour's statistical evidence as probative.

Mr. Ridenour specifically argues that the incarceration standard for his most serious offenses (two counts of second degree murder) has increased from thirty years in 1996-99 to over 40 years in 2008. This supposition is based on his comparison of Plaintiff's Exhibits EE and L. Exhibit EE is a parole review screening recommendation sheet dated January 28, 1999. The guideline range for Mr. Ridenour is 384 months to life. This range is comprised of a recommended 300 months to life on the two murder convictions and an additional 84 months for his other offenses. Exhibit L lists the reasons given by one member of the parole board for denying Mr. Ridenour's release. That member voted to continue his parole hearing until he had served a total of forty years (twenty years per homicide).

The Court finds that this evidence fails to establish a genuine issue of material fact that fifteen years per homicide was ever the standard for releasing an inmate convicted of murder or that the current standard is twenty years per homicide. Plaintiff's Exhibit L represents nothing more than one parole board member's opinion that Mr. Ridenour should not be released until he has served forty years and does not involve the application of any guideline. See Grennier, 453 F.3d at 445 (attitudes of public officials who administer a discretionary parole system do not violate the Constitution).

V.

Based on the foregoing reasons, the Court denies Mr. Ridenour's motions for extension of time to complete discovery (#44), for judicial notice (##47, 48), to compel discovery (#53), to order the clerk to provide a copy of his memorandum in opposition to summary judgment with attachments (#63), for leave to file an amended complaint (#64), and to strike the affidavit

of Cynthia Mausser (#69).  The Court also denies the defendants'
motion in limine (#66).  The Court grants in part Mr. Ridenour's
motion to supplement the summary judgment record (#72).  It is
further recommended that the defendants' motion for summary
judgment (#54) be granted and that this action be dismissed.

<u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that
party may, within ten (10) days of the date of this Report, file
and serve on all parties written objections to those specific
proposed findings or recommendations to which objection is made,
together with supporting authority for the objection(s).  A judge
of this Court shall make a de novo determination of those
portions of the report or specified proposed findings or
recommendations to which objection is made.  Upon proper
objections, a judge of this Court may accept, reject, or modify,
in whole or in part, the findings or recommendations made herein,
may receive further evidence or may recommit this matter to the
magistrate judge with instructions.  28 U.S.C. Section 636(b)(1).

The parties are specifically advised that failure to object
to the Report and Recommendation will result in a waiver of the
right to have the district judge review the Report and
Recommendation de novo, and also operates as a waiver of the
right to appeal the decision of the District Court adopting the
Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140
(1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).


                              /s/ Terence P. Kemp
                              United States Magistrate Judge