IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

William L. Ridenour,                    :

          Plaintiff,                    :

     v.                                 :          Case No. 2:08-cv-682

Terry Collins, et al.,                  :          JUDGE FROST

          Defendants.                   :


**OPINION AND ORDER**

This matter is before the Court to consider the Report and
Recommendation issued by the Magistrate Judge on December 2, 2009
(#78).  The Magistrate Judge recommended that the defendants'
motion for summary judgment (#54) be granted and that this action
be dismissed.  The Magistrate Judge, in connection with this
recommendation, also ruled on several nondispositive motions.
The motions of plaintiff William Ridenour for extension of time
for completion of discovery (#44), for judicial notice (## 47,
48), to compel discovery (#53), to provide a copy of his
memorandum with attachments (#63), for leave to file an amended
complaint (#64), and to strike the affidavit of Cynthia Mausser
(#69) were denied.  The defendants' motion *in limine* (#66) was
also denied.  Mr. Ridenour's motion to supplement the summary
judgment record (#72) was granted.

On December 15, 2009, Mr. Ridenour filed an objection (#81)
to the Report and Recommendation.  He asks this Court to reject
the recommended disposition of the defendants' summary judgment
motion and to reconsider the Magistrate Judge's denial of his
various motions.  On January 15, 2010, the defendants filed their
response to Mr. Ridenour's objection.  For the following reasons,
the Court overrules Mr. Ridenour's objection and adopts the
Report and Recommendation in its entirety.

# I. STANDARD OF REVIEW

When objections are received to a report and recommendation on a dispositive matter, the District Judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed.R.Civ.P. 72(b)(3).  After review, the District Judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.; see also* 28 U.S.C. §636(b)(1)(C).

In reviewing a magistrate judge's ruling on a nondispositive matter, the District Judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law."  Fed.R.Civ.P. 72(a); *see also* 28 U.S.C. §636(b)(1)(A).  Under the "clearly erroneous" standard, the district court must affirm the magistrate judge's order unless it has a definite and firm conviction that a mistake has occurred.  *In re Search Warrants Issued Aug. 29, 1994*, 889 F.Supp. 296, 298 (S.D. Ohio 1995).  A district court's review under the "contrary to law" standard is plenary, and the court may set aside any legal conclusions that "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent."  *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992).

# II. OBJECTIONS TO NONDISPOSITIVE MOTIONS

A. Plaintiff's Motion to Extend Pretrial Deadlines

Mr. Ridenour argues that he never had an opportunity to complete adequate discovery because the defendants refused to provide sufficient answers to his interrogatories, requests for admission, and requests for production.  He specifically objects to the defendants' redaction of information based on their alleged security and privacy concerns.  In his view, the

defendants should have been required to seek a protective order rather than redacting such information on their own. Mr. Ridenour asserts that had the defendants moved for a protective order, the Magistrate Judge could have made an *in camera* inspection of the documents to determine whether he was entitled to the information in unredacted form. Mr. Ridenour also contends that the Magistrate Judge should have granted him a continuance pursuant to Fed.R.Civ.P. 56(f) to conduct further discovery prior to issuing a Report and Recommendation on the defendants' summary judgment motion.

The burden lies on the party seeking discovery to proffer facts demonstrating that the evidence sought actually exists and is sufficient to preclude summary judgment. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). The Court concludes that Mr. Ridenour has not satisfied that burden. In his affidavit, he claims that it is absolutely essential that he receive the statistics for prisoners paroled in 1972. Not only has he failed to establish a reasonable likelihood that these statistics exist, he has also failed to show how they might preclude summary judgment in light of the fact that he did not become eligible for parole until 1982. Whether Mr. Ridenour is entitled to the redacted materials will be addressed in the context of his second motion to compel.

B. Plaintiff's Motions to Take Judicial Notice

Mr. Ridenour acknowledges that the Magistrate Judge correctly outlined the facts which were the subject of his requests for judicial notice. He contends, however, that the Magistrate Judge misconstrued his request that the Court take judicial notice of the fact that the defendants misapplied Ohio Rev. Code §§2903.02 and 2967.13 to increase, or even eliminate, his minimum parole eligibility. Mr. Ridenour also maintains that

the Court should take judicial notice of the testimony of Beverly
Seymour and John Gerhart before the Senate Finance & Financial
Committee because their testimony is in the public record and is
"capable of accurate and ready determination by resort to sources
whose accuracy cannot reasonably be questioned."  Fed.R.Evid.
201(b).

The Magistrate Judge determined that it is inappropriate to
take judicial notice of the Ohio statutes Mr. Ridenour believes
the defendants misapplied, and that Ohio law is simply a matter
for the Court to interpret.  *See United States v. Dedman*, 527
F.3d 577, 586 (6th Cir. 2008).  Mr. Ridenour has not shown that
this determination is contrary to law.  The question of whether
the defendants misapplied the law and thereby violated his rights
under the Ex Post Facto Clause is the central issue in this
lawsuit and is clearly disputed.  Thus, the statutes at issue do
not fall within the framework of Fed.R.Evid. 201(b)for taking
judicial notice.

The Court also is not required to take judicial notice of
the testimony of Ms. Seymour and Mr. Gerhart.  While the fact
that they testified before the Ohio Senate committee may not be
open to dispute, the contents of their testimony, particularly
when offered for the truth of the matters asserted, evince
considerable dispute.  *See United States v. Bonds*, 12 F.3d 540,
553 (6th Cir. 1993)(court not required to take judicial notice of
National Research Committee report where significance of its
contents was disputed); *Deal v. Hamilton County Bd. of Educ.*, 392
F.3d 840, 852-53 (6th Cir. 2004)(district court did not abuse its
discretion in refusing to take judicial notice of declarations
filed by school system expert in unrelated case).

Lastly, Mr. Ridenour claims that a newspaper article he
submitted should not be excluded because it allegedly shows that
the time served for two counts of first degree murder was on

-4-

average fourteen years, even where one of the victims was a police officer. He asserts that the Court should take judicial notice of this "fact" and draw any inferences in his favor.

Mr. Ridenour did not, however, ask the Court to take judicial notice of this newspaper article. In his second motion for judicial notice, the only newspaper article to which he referred was an item by Dawson Bell in the Free Press about Michigan parolees who had turned their lives around. The article he describes in his objection appears to be the one in the Dayton Daily News which was attached as Exhibit M to his memorandum opposing summary judgment. Regardless of whether Mr. Ridenour originally sought judicial notice of the article, it cannot be used for the purpose of showing that the average time served by an inmate for two counts of first degree murder was fourteen years. *See Cofield v. Alabama Public Service Comm'n*, 936 F.2d 512, 517 (11th Cir. 1991)(that a statement appears in a newspaper does not establish that the statement is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

C. Plaintiff's Second Motion to Compel

Mr. Ridenour observes that the Magistrate Judge denied his second motion to compel production of parole statistics from 1972 to 1976 on the ground that the defendants cannot be compelled to produce documents that do not exist or which they do not possess or control. He contends, however, that the defendants never denied that they possessed the raw data to compile those statistics, but maintained only that they had not yet done so. Mr. Ridenour also objects to the Magistrate Judge's finding that certain redacted information is not relevant without first conducting an *in camera* inspection. In his view, the Magistrate Judge's purported reliance on the defendants' self-serving

statements regarding the redacted information was contrary to the standard for summary judgment.

Before the movant is entitled to an *in camera* inspection of documents, he must show a reasonable probability that they contain relevant evidence. *Brown v. Sheets*, No. 2:06-cv-448, 2007 WL 3024456 at *21 (S.D. Ohio Oct. 15, 2007). Again, Mr. Ridenour has not done so. Accordingly, the Magistrate Judge could rule on the second motion to compel without first conducting an *in camera* inspection. *See Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983)(district court did not err in reaching conclusion about documents requested under the Freedom of Information Act without utilizing an *in camera* inspection).

D. Plaintiff's Motion for Copy of Document 57 and Attachments

Mr. Ridenour claims that he needs a copy of his memorandum in opposition to the defendants' summary judgment motion, together with its attachments, in order to properly submit his objections to the Magistrate Judge's Report and Recommendation, and that without such a copy, he will suffer irreparable prejudice. He further states that he relied on the Clerk's alleged past practice of providing him with a date-stamped copy of all documents he filed, and that to now deny such copies is fundamentally unfair and prejudicial.

The record shows that Mr. Ridenour was able to prepare and file a thirty-six page objection to the Report and Recommendation despite the fact that he did not retain a copy of his memorandum in opposition to the defendants' summary judgment motion with attachments. He has not demonstrated how the lack of a copy of document #57 prejudiced him in the preparation and filing of his objection. He has also failed to establish any past practice by the Clerk to mail him a time-stamped copy of his pleadings and other papers even when he did not provide extra copies at the

time of filing or that he is legally entitled to rely on such a practice.  For these reasons, the Court concludes that the Magistrate Judge's denial of his request for a copy of document #57 was not contrary to law.

E. Plaintiff's Motion for Leave to File Amended Complaint

Mr. Ridenour raises several objections to the Magistrate Judge's denial of his motion for leave to file an amended complaint.  First, he argues that the Court should grant leave to amend to add a new legal claim because the proposed claim allegedly arises out of the same transaction or occurrence as his other claims.  He further asserts that this amendment should relate back to the commencement of this case since the new parties to be added are the same John Doe defendants listed in his original complaint and the new separation of powers claim is nothing more than an outgrowth of his Ex Post Facto claim against all of the defendants.  Because the Magistrate Judge's decision to deny leave to add the separation of powers claim was based in part on grounds of futility, the Court will conduct a de novo review of that portion of the decision.  *See Winget v.JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 572 (6th Cir. 2008)(when district court bases its denial of leave to amend on futility ground, court of appeals will review that decision de novo).

Assuming that the proposed amendment, if granted, would relate back to the original complaint, Mr. Ridenour still must show that his proposed claim would survive a motion to dismiss. The Court of Appeals for the Sixth Circuit has held that a claim based on the separation of powers between a state trial judge and a state prosecutor is a matter of state law that is not cognizable for purposes of federal habeas review.  *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000).  The Northern District of Ohio subsequently determined that an inmate's claim based on

the separation of powers between state parole board members and the trial court is similarly a matter of state law, and not federal law. *Louis v. Collins*, No. 3:08 CV 930, 2008 WL 2705038 at *6 (N.D. Ohio Jul. 8, 2008). Based on its own review of these decisions, the Court concludes that permitting Mr. Ridenour to amend his complaint to add the proposed separation of powers claim would be futile. Given the requirement that a §1983 plaintiff show that the defendants deprived him of a federal statutory or constitutional right, such a claim could not survive a motion to dismiss.

In his second objection to the denial of his motion to amend, Mr. Ridenour contends that, contrary to the Magistrate Judge's understanding of this suit as purely an official capacity action, the allegations in his complaint should have alerted these proposed defendants to his intention to hold them personally liable for damages. This Court does not agree and will overrule the objection.

In *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir 1989), the Sixth Circuit held that plaintiffs seeking damages under §1983 must clearly set forth in their pleadings that they are suing state officials in their individual capacity. The Sixth Circuit later clarified *Wells* and explained that the failure to state explicitly whether a defendant is sued in his individual capacity, however, "is not fatal if the course of proceedings otherwise indicates that the defendant[s] received sufficient notice." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001)(en banc), *cert. denied*, 536 U.S. 922 (2002).

In this case, the course of proceedings clearly indicate that Mr. Ridenour sued the defendants in their official capacity only. On the face of his complaint, the name of each defendant is followed by the defendant's title and the phrase "In His Official Capacity." Even the John Doe defendants identified as

unknown parole board member and/or other officials are
characterized in this manner.  In addition, the complaint seeks
only declaratory and injunctive relief, not damages.  The sole
factor offered by Mr. Ridenour in support of his argument is that
the defendants' answer asserts a defense of qualified immunity
"[t]o the extent Plaintiff intends to seek any monetary damages."
Mr. Ridenour did not indicate that he was seeking monetary
damages until after discovery closed and the defendants filed
their motion for summary judgment.  Under these circumstances, he
has not satisfied the "course of proceedings" test.

     In Mr. Ridenour's third and final objection, he takes issue
with the Magistrate Judge's determination that he should have
sought leave to amend at a much earlier date.  Mr. Ridenour
apparently believes that because the scheduling order did not
provide a specific deadline for amendment of pleadings, his delay
in seeking leave to amend until after discovery had closed and
the defendants had filed their motion for summary judgment should
not factor in the Court's decision.  The Magistrate Judge,
however, did not base his denial of leave to amend on the
scheduling order entered in this case, but rather on the standard
set forth in Fed.R.Civ.P. 15(a) that "leave be freely granted
when justice so requires."  Under this standard, the Magistrate
Judge clearly had discretion to consider the prejudice to the
defendants which would entail if leave to amend were granted at
this stage of the proceedings.  *See Inge v. Rock Financial Corp.*,
388 F.3d 930, 937-38 (6th Cir. 2004)(district court did not abuse
its discretion in denying plaintiff leave to amend where all
significant discovery had been completed and the dispositive
motion deadline had passed).  Accordingly, the Magistrate Judge's
decision to deny Mr. Ridenour leave to amend his complaint was
not contrary to law.

F. Defendants' Motion to Bar Use of Inadmissible Evidence

Mr. Ridenour notes that the Magistrate Judge denied the defendants' motion *in limine* because it could not be said that the documents in question have no probative value. Even though the Magistrate Judge denied the defendants' motion *in limine*, Mr. Ridenour seems to be arguing that in resolving motions for summary judgment, the Court must not make credibility determinations or weigh evidence. He then goes on to do just that by arguing that his sixty-two exhibits entitle him, and not the defendants, to summary judgment.

Because the Magistrate Judge decided the defendants' motion in Mr. Ridenour's favor, he has no grounds for seeking reconsideration. *Pride v. BIC Corp.*, 218 F.3d 566, 576 (6th Cir. 2000). Furthermore, Mr. Ridenour has not moved for summary judgment, and no such motion is the subject of the Report and Recommendation. Therefore, the Court will not entertain his objection on this ground.

G. Plaintiff's Motion to Strike Affidavit of Cynthia Mausser

Mr. Ridenour claims that first and foremost, Cynthia Mausser's affidavit contradicts the defendants' answers to his requests for admission. He queries which is more credible, Ms. Mausser's affidavit or the sworn statements of Linda Janes? He then points out that such credibility determinations are for the jury, and that all justifiable inferences must be construed in his favor for purposes of summary judgment.

The Magistrate Judge found that the two statements are not contradictory, and that finding is not clearly erroneous. Absent a direct contradiction, a court should not strike an affidavit. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 909 (6th Cir. 2006). Even if the statements contradicted each other, they were made by different individuals. While there is support for the proposition that the nonmoving party may not create a

disputed issue of fact by filing an affidavit that contradicts that party's earlier deposition testimony, *see, e.g., Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997), that is not the case here. Furthermore, questions as to the credibility of the statements in Ms. Mausser's affidavit do not preclude summary judgment. *See Del Valle v. BellSouth Telecommunications, Inc.,* 200 Fed.Appx. 528 (6th Cir. 2006)(respondent may not defeat summary judgment motion by arguing that movant's evidence may not be credible, but must present affirmative evidence supporting its case). Accordingly, Mr. Ridenour has not shown that the Magistrate Judge's denial of his motion to strike the affidavit is contrary to law.

H. Plaintiff's Motion to Supplement Summary Judgment Record

Mr. Ridenour quotes language from the portion of the Report and Recommendation resolving his motion to supplement the summary judgment record. The Magistrate Judge granted his motion, but Mr. Ridenour apparently takes issue with the statement that "the Court can give this evidence whatever weight it deserves." Mr. Ridenour submits that it is not the Court's province to weigh evidence in summary judgment proceedings.

Because the Magistrate Judge decided the motion to supplement the summary judgment record in Mr. Ridenour's favor, he has no grounds for seeking reconsideration. *Pride*, 218 F.3d at 576. But assuming such grounds existed, the Magistrate Judge's statement was not contrary to law. While courts generally may not weigh evidence in resolving summary judgment motions, the quantity and quality of the evidence submitted to create an issue of material fact must be sufficient to support a jury verdict. *See Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995). Put another way, "[t]he nonmoving party must present significant

-11-

probative evidence to show that there is more than some
metaphysical doubt as to the material facts."  *Frazier v. Honda
of America Mfg.,Inc.*, 431 F.3d 563, 565-66 (6th Cir. 2005).  If
the evidence is merely colorable, summary judgment may be
granted.  *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th
Cir. 2004)(citing *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242
(1986)).  Thus, some weighing of the evidence in order to
determine the existence of material facts is unavoidable.

## II. OBJECTIONS TO RECOMMENDED DISPOSITION ON SUMMARY JUDGMENT

### A. Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue of material fact and that the
movant is entitled to judgment as a matter of law."  Fed.R.CivP.
56(c).  The Court may therefore grant a motion for summary
judgment if the nonmoving party who has the burden of proof at
trial fails to make a showing sufficient to establish the
existence of an element that is essential to that party's case.
*See Muncie Power Prods., Inc. v. United Tech. Auto., Inc*, 328
F.3d 870, 873 (6th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477
U.S. 317, 322(1986)).

In viewing the evidence, the Court must draw all reasonable
inferences in favor of the nonmoving party, who must set forth
specific facts showing that there is a genuine issue of material
fact for trial.  *Id.* (citing *Matsushita Elec. Indus. Co. v.
Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest
Condo. Ass'n,* 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue
of material fact exists "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
*Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986)).  Consequently, the central issue is

"'whether the evidence presents a sufficient disagreement to
require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law.'".  *Hamad*, 328 F.3d at
234-35 (quoting *Anderson*, 477 U.S. at 251-52).

     With this standard in mind, the Court will determine de novo
those portions of the Magistrate Judge's recommended disposition
to which Mr. Ridenour properly objected.  These include the
Magistrate Judge's conclusions that the parole board either did
not apply the following statutes and guidelines retroactively at
Mr. Ridenour's May 23, 2008 parole hearing or that their
application to his parole suitability did not violate the Ex Post
Facto Clause of the United States Constitution.


B.    Retroactive Application of OAC §5120:1-1-07
     This guideline permits the parole board to determine that an
inmate not be released at the time of his parole eligibility
where there is substantial reason to believe that, *due to the
serious nature of the crime*, the release would create an undue
risk to public safety or would not further the interest of
justice nor be consistent with the security and welfare of
society.  Ohio Admin. Code §5120:1-1-07(A)(2) (emphasis added).
Mr. Ridenour contended in his memorandum in opposition to summary
judgment that OAC 5120:1-1-07(A)(2) constitutes an ex post facto
law because the "serious nature of the crime" factor was not part
of the parole scheme in effect when he was convicted and
sentenced in 1972.  The Magistrate Judge determined that this
factor had been a part of the parole guidelines since 1975, and
possibly earlier.  In his objection, Mr. Ridenour now clarifies
that "he was referring to the fact that [this provision] was not
part of the previous parole scheme exclusively or in isolation."
He further elaborates that in 1972 whether an inmate had been
rehabilitated and the nature of the crime were given equal weight

-13-

in parole determinations, but that now rehabilitation is no
longer a part of the equation.

Mr. Ridenour's contention that an inmate's rehabilitation
is no longer a factor in the board's decision to grant or deny
parole is incorrect.  Not only does the current version of
5120:1-1-07(B) require the board to consider "[a]ny reports
prepared by any institutional staff member relating to the
inmate's personality, social history, and adjustment to any
institutional programs and assignments" and "[t]he inmate's
vocational, education, and other training," the decision denying
Mr. Ridenour's release specifically noted that he had completed a
number of programs and had excellent institutional conduct for
the past thirty years.


C. Retroactive Application of R.C. §2967.13

This statute, which became effective in 2002, changed the
parole eligibility date for prisoners serving either a life
sentence or a sentence with a minimum term of fifteen years.
Because Mr. Ridenour became eligible for parole in 1982, some
twenty years before this version of §2967.13 went into effect,
the Magistrate Judge found that its application could not have
impacted the board's decision in 2008 to deny parole.  Mr.
Ridenour nevertheless believes that the board's retroactive
application of the 2002 change, when coupled with the 2007 parole
guidelines, effectively eliminated the possibility that he will
ever be suitable for release.  The Magistrate Judge found that he
failed to show that the parole board even considered the 2007
Parole Guidelines when it determined he was not suitable for
release, but that, in any event, application of the 2007
guidelines would not have had any adverse impact on the board's
decision whether or not to grant him parole.  Mr. Ridenour
challenges these findings in his objection.

Mr. Ridenour's argument is based on his belief that the parole board considers his minimum sentence to be life imprisonment. This belief is illogical given the fact that life imprisonment is his maximum sentence. It is also inconsistent with the fact that the board has scheduled another hearing for Mr. Ridenour for May 1, 2012. If his minimum sentence is life imprisonment under the 2007 Parole Guidelines, there would be no reason to conduct any future hearings to determine his suitability for parole. Furthermore, at least one of the board members specifically indicated that he would consider releasing Mr. Ridenour after he had served forty years. If the guidelines truly provided for a minimum sentence of life imprisonment, as Mr. Ridenour contends, there would be no rationale for releasing him after forty years. Accordingly, as the Magistrate Judge concluded, there is no basis for Mr. Ridenour's claim that he faces a significant risk of serving longer than he would have under the parole standards in effect at the time of his conviction and sentence. *See Nur v. Mausser*, No. 1:08 CV 110, 2008 WL 1775249 at *3 (N.D. Ohio Apr. 15, 2008).

D. Retroactive application of R.C. §2903.02

Ohio Rev. Code §2903.02 provides that "[n]o person shall purposely cause the death of another" and that "[w]hoever violates this section is guilty of murder." The punishment for committing murder in violation of O.R.C. §2903.02 is an indefinite term of fifteen years to life. *See* Ohio Rev. Code §2929.02. There is nothing in the statute to indicate that the legislature intended it to apply retroactively.

Mr. Ridenour states that the problem with the retroactive application of this statute is that it allegedly "creates a sufficient risk of increasing the measure of punishment attached to the covered crimes." Once again he quotes from the 2007

parole guidelines that any "distinctions between the seriousness of the offenses will be addressed by the different minimum sentences required to be served before release eligibility, and when determining release suitability." Mr. Ridenour points out that the minimum sentence he was required to serve before becoming eligible for parole was ten years. *See* Ohio Rev. Code §2967.13 (eff. 3-28-1965). The minimum sentence under §2903.02 is fifteen years. Mr. Ridenour maintains that because the seriousness of the offense and parole suitability are allegedly conditioned upon the different minimum sentences, he is disadvantaged by the five-year increase.

Mr. Ridenour does not address the Magistrate Judge's finding that there is no evidence that the parole board denied Mr. Ridenour's release because it considered him ineligible for parole. He also ignores the fact that in the unlikely event that the board applied §2903.02 to him at his May 23, 2008 hearing, there would have been no practical effect because he had already served more than fifteen years. Therefore, to the extent that the seriousness of the offense and parole suitability are conditioned upon the different minimum sentences, Mr. Ridenour cannot show that he was disadvantaged by the five-year increase in the minimum sentence for murder.


E. Retroactive Application of Violent Offender Policies

Mr. Ridenour argues that the certification by Director Wilkinson dated August 12, 1996, that the State of Ohio "has implemented, or will implement, correctional policies and programs, including Truth-in-Sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed...," raises at a minimum a factual dispute as to whether the parole board retroactively applied the Violent Crime Control and Law Enforcement Act of 1994 to increase the time he must

serve before being found suitable for release.

The Court finds that the promises made by Director Wilkinson do not create a disputed issue of material fact. By the time his May 23, 2008 parole hearing took place, there is no doubt that Mr. Ridenour had already served a substantial portion of his sentence. Accordingly, there is no reason to believe that Director Wilkinson's statement had any effect on the board's decision to deny parole.

F. <u>Retroactive Application of Ohio's Victims' Rights Statutes</u>

Mr. Ridenour claims that Ohio's victims' rights statutes are not merely procedural because a representative of the victim's rights organization can actually stop the release of someone who has been granted parole. He thus contends that *Clumm v. Warden, Chillicothe Correctional Institution*, No. 2:08-cv-365, 2008 WL 4346797 (S.D. Ohio Sep. 8, 2008), which held to the contrary, was wrongly decided.

Mr. Ridenour's contention that a victim's representative can stop the release of an inmate granted parole is simply not accurate. While the victim's representative and immediate family may object to a panel's recommendation for parole and request a hearing before the full board, which must be granted, "the board may approve or disapprove the recommendation or defer its decision until a subsequent full board hearing." Ohio Rev. Code §5149.101(C). Accordingly, the board retains its full discretion as to the grant or denial of parole. *Clumm*, 2008 WL 4346797 at *3. For this reason, the Court agrees with Judge Marbley that the Ohio's victims' rights statutes are "merely procedural and [do] not increase a prisoner's punishment." <u>See</u> <u>id</u>. Even where applied retroactively, such statutes cannot violate the Ex Post Facto Clause.

G.    Practical Implementation of Current Parole Statutes,
      Regulations, Guidelines, and Policies

Mr. Ridenour points out that by the time of his next parole
hearing, he will have served forty years.  He asserts  the fact
that Tony Logdon, who likewise was convicted of two counts of
second degree murder, served only thirty years is circumstantial
evidence that the applicable parole standard for each count of
second degree murder formerly was fifteen years.  He also argues
that Derek Farmer and his co-defendant served an average of
fourteen years for two counts of first degree murder where the
victims were an eighty year old man and a police officer.  By his
calculation, the average time served for all three of these
prisoners was twenty-two years.  In comparison, he will have
served more than eighteen years longer.

The examples cited by Mr. Ridenour do not create a genuine
issue of material fact that fifteen years per homicide was ever
the standard for releasing an inmate convicted of murder because
these inmates are not similarly situated to him.  In addition to
his second degree murder convictions, he was also found guilty of
several other serious felonies, including escape and kidnaping.
Mr. Ridenour again complains that had the defendants cooperated
in discovery, he would have had actual statistics showing the
time served for similarly situated inmates in 1972.  As
previously noted, however, he has not shown any likelihood that
such statistics even exist.  More importantly, the parole
statistics that actually do exist show that there are no inmates
similarly situated to Mr. Ridenour.  See Affidavit of Steve Van
Dine ¶6.

### III. CONCLUSION

Based on the foregoing reasons, the Court overrules Mr.
Ridenour's objection (#81) and adopts the Report and
Recommendation (#78) in its entirety, including the Magistrate

Judge's orders on nondispositive motions.  The Court further
GRANTS the defendants' motion for summary judgment (#54).  The
Clerk shall terminate this action.

**IT IS SO ORDERED.**

                              /s/ Gregory L. Frost
                            GREGORY L. FROST
                            UNITED STATES DISTRICT JUDGE